UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES, | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 1:16-cr-119 |
| v. | ) | |
| | ) | Judge Mattice |
| KARL HOOD, | ) | Magistrate Judge Steger |
| | ) | |

## ORDER

On July 12, 2017, United States Magistrate Judge Christopher H. Steger filed his Report and Recommendations, (Doc. 30), pursuant to 28 U.S.C. § 636(b)(1). Therein, Magistrate Judge Steger recommended that Defendant's Motion to Suppress, (Doc. 19), be granted in part and denied in part. (Doc. 30 at 9). On July 26, 2017, Defendant filed timely objections to the Report and Recommendations. (Doc. 31).

The Court has now reviewed the entire record relevant to the instant objections, and for the reasons described below, the Court will **ACCEPT and ADOPT** Magistrate Judge Steger's Report and Recommendations and will **GRANT in part** and **DENY in part** Defendant's Motion to Suppress.

I. **BACKGROUND**

The Parties have not objected to the Magistrate Judge's recitation of the facts, and the Court concludes that it is accurate.[1] The pertinent facts as summarized by Magistrate Judge Steger are as follows:

---

[1] The Parties agree that Defendant's statements made during the execution of the search warrant should be suppressed, and the Report and Recommendations concurred with this opinion. (Doc. 30 at 2). Because neither party has objected to this portion of the Report and Recommendations, the facts surrounding those statements will not be discussed herein, and Defendant's Motion to Suppress same will be **GRANTED**.

During the execution of the search warrant at Defendant's residence on August 24, 2016, law enforcement found firearms, crack, powder cocaine, pills, cash and drug paraphernalia. Defendant was arrested and taken to the Hamilton County, Tennessee jail where, on September 13, 2016, he made two phone calls from the jail facility using the jail phone system. Both calls were recorded and Defendant made inculpatory statements during these calls. Defendant contends that the recordings of these phone calls should be suppressed.

Defendant does not contend that the recording of his phone calls from the jail was, by itself, a violation of his Fourth Amendment rights. During the evidentiary hearing on Defendant's motion to suppress, Special Agent Adam Baldwin of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified concerning Defendant's jailhouse phone calls. More specifically, Special Agent Baldwin stated that, in 2016, he was assisting local law enforcement with the investigation of Defendant. According to Special Agent Baldwin, when a call is placed from or received by a Hamilton County jail inmate, a pre-recorded warning is played at the beginning of the call advising the participants that the call may be recorded. He verified that this warning was given in advance of both phone calls made by Defendant on September 13, 2016. Consequently, when Defendant engaged in those telephone conversations, he had full knowledge that his conversations were subject to being recorded.

Defendant's sole argument for suppressing the recorded jailhouse calls is the same argument he makes to suppress the evidence obtained from the search of his residence. In both instances, Defendant contends the affidavit used to obtain the search warrant lacked probable cause and should never have been issued. Consequently, he argues, all evidence found at the residence pursuant to the August 24 search, as well as the September 13 recorded phone calls, should be suppressed as fruit of the poisonous tree. Defendant's arguments, therefore, are entirely reliant on the validity of the search warrant, a discussion of which follows.

Investigator Charles Ballard with the Chattanooga Police Department (CPD) prepared and signed the affidavit used to obtain the search warrant at issue in this case. This affidavit provided as follows: Ballard is assigned to the narcotics division of CPD and has "specialized training in and experience with the world of controlled substances" [Aff. ¶ 1]. On July 28, 2016, Ballard received information from a confidential informant (CI) that "Carl Hood is selling crack cocaine from 2615 Lockwood Street" [Id. ¶ 2]. According to the CI, within the last 72 hours, the CI was on the premises of 2615 Lockwood Street and saw crack cocaine in the possession and control of one Carl Hood, a black male approximately 5'6" tall, medium build with a short to bald haircut [Id. ¶ 3]. The CI informed Ballard that there was short term traffic at this address consistent with drug sales, and Ballard

confirmed this averment with his own observations [Id. ¶ 4-5]. The affidavit further states:

> The said informant has made one controlled buy from the above said address for your affiant, with this buy occurring within the last 72 hours. The following controls were in place: Under the direction and control of your affiant, the said informant was physically checked or searched by your affiant for any type of contraband, your affiant found none on the informant who was visually monitored entering the premises. The informant conducted the hand to hand drug transaction, specifically money for crack cocaine. Your affiant then observed the informant leave the said premises. Your affiant, close in time thereafter personally retrieved from the informant crack cocaine purchased by the informant and suspected to be crack cocaine. Your affiant personally inspected the crack cocaine and found it to match in color, texture, shape, and odor the controlled substance known as crack cocaine. Your affiant followed appropriate procedures or safeguards which ensured that the currency supplied to the informant prior to the purchase was spent as directed, and your affiant again physically checked or searched the informant and found no other contraband on the informant. This purchase was made by the informant, the informant made no stops or had no contact with any individuals before handing crack cocaine to your affiant.

[Id. ¶ 6]. Ballard stated he had known the CI for thirteen years and that, on at least three occasions in the past, the CI had provided to him information leading to the arrests and convictions of individuals in violation of narcotics laws including crack cocaine [Id. ¶ 7-8].

(Doc. 30 at 2–4).

## II. ANALYSIS

### A. Probable Cause

Defendant objects to Magistrate Judge Steger's finding that the search warrant at issue was supported by probable cause. (Doc. 31 at 1). As a preliminary matter, Defendant's entire Objection merely reiterates the arguments raised in his original Motion to Suppress. (*Compare* Doc. 31 *with* Doc. 19). It is well-established that such objections are without merit and may be denied summarily. *VanDiver v. Martin*, 304 F.

3

Supp. 2d 934, 937 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). Nevertheless, the Court will engage in a brief analysis of the issues raised in Defendant's Objection.

Defendant argues for five reasons that the search warrant was issued without probable cause. No single factor is controlling in deciding whether a search warrant is supported by probable cause. In making such a determination, the Court must look at the totality of the circumstances, and should avoid a "grudging or negative attitude" towards a warrant, affording the magistrate's finding of probable cause "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

First, Defendant argues that "[a]n informant's information is considered more reliable if the affidavit supporting the request for a warrant avers that the identity of the confidential informant has been disclosed to the magistrate." (Doc. 31 at 2). There is no requirement, however, that the affiant disclose the identity of his informant so long as that informant is otherwise reliable. *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) ("In fact, independent corroboration of the tip by police is not required when the court is provided with assurances that the [confidential] informant is reliable . . . In such cases, the affiant need only attest 'with some detail' that the informant provided reliable information in the past." (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005))). Here, the affiant specifically informed the magistrate that he had known the

4

confidential informant for thirteen years, and that said informant had at least thrice provided information leading to arrests and convictions. (Doc. 19-1 at 3). Even if this were not sufficient standing alone, the affiant also informed the magistrate that he had corroborated, via personal surveillance, the informant's reports of short term traffic consistent with drug trafficking. (*Id.* at 2). The Court thus finds that the affiant's failure to disclose the identity of the informant does not render the search warrant invalid.

Second, Defendant claims that because the informant's identity was not disclosed, Defendant has no way to know anything about his/her criminal history or motivation for providing information to the affiant. (Doc. 31 at 2). As identified by Magistrate Judge Steger, Defendant has cited no authority for his argument that the criminal background of a confidential informant should be given in an affidavit. Again, a confidential informant's information may be found credible if the affiant avers that he/she has given reliable information to the affiant in the past. *See, e.g.*, *United States v. Neal*, 577 F. App'x 434, 441 (6th Cir. 2014) ("This Court has repeatedly held that an affidavit that furnishes details of an informant's track record of providing reliable tips to the affiant can substantiate the informant's credibility, such that other indicia of reliability may not be required when relying on the informant's statements.").

Third, Defendant argues that "there is no indication in the affidavit that the controlled buy, or the alleged short term traffic, were recorded in any way." (Doc. 31 at 2). Defendant has identified no case law, and the Court has found none, finding that this is a relevant consideration in the probable cause analysis.

Fourth, and again without citing any case law in support, Defendant claims that the warrant was issued without probable cause because the crack cocaine purchased during the controlled buy was never weighed or tested to confirm that it was an illegal

5

substance. (*Id.* at 3). Lab testing of drugs purchased in a controlled buy is not required to establish probable cause—and for good reason. A lab test could take several days to complete, which could render the controlled buy "stale" under Fourth Amendment jurisprudence. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) ("[I]n seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information . . . ."). Here, the affiant "personally inspected the crack cocaine and found it to match in color, texture, shape, and odor the controlled substance known as crack cocaine." (Doc. 19-1 at 2–3). Given the affiant's extensive experience with drug crime investigations, (*id.* at 1–2), the Court finds that the failure to lab test the suspected drugs does not render the search warrant void of probable cause.

Finally, Defendant argues that the affidavit "does not indicate the length of time Mr. Hood's residence was observed, the number of individuals who allegedly visited the residence or that these visits were video recorded . . . ." (Doc. 31 at 3). Again, however, Defendant has failed to cite any authority for the proposition that these omissions affect the probable cause analysis.

Given the totality of the circumstances, the Court finds that the affidavit in support of the search warrant at issue provided much more than probable cause that crack cocaine would be found at 2615 Lockwood. While the informant's identity was not disclosed, the affiant informed the magistrate that he had known him/her for thirteen years and he/she had provided reliable information in the past. Moreover, the affiant confirmed, via first-hand observation, the reported short term foot traffic, and also monitored a controlled buy from 2615 Lockwood within 72 hours of applying for the search warrant. (*See generally* Doc. 19-1). The Fourth Amendment requires no more. *See United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) ("Probable cause is described as a fair

probability—not an absolute certainty—that evidence of the crime will be found at the location."). Accordingly, Defendant's objection to Magistrate Judge Steger's finding that the search warrant at issue was supported by probable cause will be **OVERRULED**.

### B. Fruit of the Poisonous Tree

Defendant also objects to Magistrate Judge Steger's finding that Defendant's statements while incarcerated should not be suppressed. His only argument in favor of suppressing these statements, however, is that because the above-discussed search warrant was issued without probable cause, Defendant's statements while incarcerated are fruit of the poisonous tree. (Doc. 31 at 3–4). Because the Court has found that the search warrant at issue was supported by probable cause, *see supra* Part II.A, Defendant's final objection will also be **OVERRULED**.

### III. CONCLUSION

For the reasons stated herein

- Defendant's Objections, (Doc. 31), are hereby **OVERRULED**;

- Magistrate Judge Steger's Report and Recommendations, (Doc. 30), is hereby **ACCEPTED and ADOPTED**; and

- Defendant's Motion to Suppress, (Doc. 19), is hereby **GRANTED in part** to the extent it seeks suppression of Defendant's statements made during the August 24, 2016 search, and **DENIED in part** to the extent it seeks suppression of evidence found at 2615 Lockwood during the August 24, 2016 search and suppression of statements Defendant made during telephone calls from the Hamilton County jail on September 13, 2016.

**SO ORDERED** this 11th day of August, 2017.

                                         */s/ Harry S. Mattice, Jr.*
                                         HARRY S. MATTICE, JR.
                                         UNITED STATES DISTRICT JUDGE