UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:16-cr-119-HSM-CHS |
| v. ) | |
| ) | |
| KARL HOOD ) | |

### REPORT AND RECOMMENDATION

This matter came before the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation on Defendant's motion to determine Defendant's competency to stand trial [Doc. 71]. "The test of whether a defendant is competent to stand trial is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *United States v. Murphy*, 107 F.3d 1199, 1203 (6th Cir. 1997) (quoting *Dusky v. United States,* 362 U.S. 402 (1960)). When the question of competency is raised, the government has the burden of proving competency by a preponderance of the evidence. *United States v. Chappie*, No. 94-5048, 1995 WL 6147, at *2 (6th Cir. Jan. 6, 1995); *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3rd Cir. 1989); *Lowenfield v. Phelps*, 817 F.2d 285, 294 (5th Cir. 1987).

**1.    Procedural Background**

On July 27, 2017, Defendant's then-counsel, Erin Rust, moved for a psychiatric examination of defendant on the ground that he may be suffering from a mental disease or defect which renders him unable to assist his attorney in the defense of his case. [Doc. 34]. On August

15, 2017, the Court ordered Defendant to be sent to a federal medical facility for a psychiatric evaluation [Doc. 41]. Defendant was sent to the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), from August 31, 2017 to September 27, 2017, for a mental health evaluation pursuant to 18 U.S.C. §§ 4241 and 4247 [Doc. 48]. On November 8, 2017, Acting Warden of FMC Devens, Richard Russell, submitted to the Court a Forensic Mental Health Evaluation prepared by Dr. Miriam Kissin, Psy. D., a Forensic Psychologist at FMC Devens [Doc. 48]. On December 12, 2017, the District Court determined Defendant was mentally competent to stand trial based on Dr. Kissin's evaluation. On January 12, 2018, Defendant's counsel, Erin Rust, filed a motion to withdraw on the ground that the attorney/client relationship had deteriorated to the point that she could not effectively represent Defendant [Doc. 56]. The Court permitted Ms. Rust to withdraw and appointed Attorney Michael Acuff to represent Defendant.

On September 5, 2018, Mr. Acuff moved under 18 U.S.C. §§ 4241 for a hearing to determine whether Defendant is mentally competent to stand trial or enter a plea [Doc. 71]. As a basis for the request, Defendant's counsel noted that, since Defendant had returned from FMC Devens, he had been disruptive and unresponsive at hearings and had "evidenced an inability to make rational decisions and to control his behavior at [sic] hearing." [Doc. 72, Memorandum in Support of Motion at 1].

        2.        **Dr. Kissin's Evaluation**

Dr. Kissin prepared Defendant's mental evaluation after his month-long visit at FMC Devens. The evaluation was based on various psychological tests, personal interviews, and observations made by staff members, as well as Defendant's medical and psychological records, and intelligence tests [Doc. 48, Evaluation]. At the time of his evaluation, Defendant was 37 years old [*Id.* at 9]. In her evaluation, Dr. Kissin noted that, while Defendant had overall borderline

intellectual functioning of 71 on the Wechsler Adult Intelligence Scale-Fourth Edition, there was a significant discrepancy between his Verbal Comprehension Index of 61 and his Perceptual Reasoning Index of 92. These scores indicated that he performs significantly better on non-verbal tasks versus verbal tasks [*Id.* at 8]. Dr. Kissin summarized that Defendant's "Full Scale Intelligence Quotient score should be understood as not a cohesive representation of his overall intellectual abilities, but rather a reflection of dissimilar skill sets." [*Id.*].

Dr. Kissin summarized Defendant's history of mental health issues as follows:

- Defendant had a long-standing substance abuse problem, primarily involving marijuana and cocaine [*Id.* at 9-10].

- Defendant developed psychotic symptoms of auditory hallucinations and paranoia in his late adolescence [*Id.* at 9].

- Defendant received out-patient treatment and anti-psychotic medications and was hospitalized on several occasions for psychiatric treatment in his teens and twenties [*Id.*]. Medications seemed to help with symptoms [*Id.*].

- Over time, Defendant's endorsement of psychotic symptoms decreased [*Id.* at 10].

- During several periods of incarceration, Defendant experienced more acute symptoms of psychosis, but those symptoms were dissimilar in quality and severity from the symptoms Defendant previously experienced and were also atypical in that the symptoms quickly resolved after engagement with mental health staff [*Id.*]. As a result of these anomalies, staff expressed concerns that Defendant was feigning symptoms [*Id.*].

- In 2014 when Defendant last saw a mental health professional, his most pressing need was substance abuse treatment [*Id.*].

At the time of Dr. Kissin's evaluation, Defendant was not experiencing hallucinations or other psychotic symptoms [*Id.*]. Dr. Kissin opined that Defendant's history is most consistent with personality pathology; namely, Anti-Social Personality Disorder [*Id.*].

Dr. Kissin also discussed Defendant's understanding of the nature of the charges against him and the court proceedings [*Id.* at 11-14]. She indicated that Defendant was cooperative and

offered "an abundance of meaningful and sophisticated information relevant to his legal case." [*Id.* at 11]. He understood the charges against him and the potential consequences of a guilty verdict; he could identify the trial participants and understood the trial process; and he understood the basic considerations for entering a plea or deciding to go to trial [*Id.* at 12-14]. Most of the discussion regarding his ability to cooperate with counsel centered on Ms. Rust's efforts to suppress evidence obtained from the execution of a search warrant [*Id.* at 13]. Defendant noted that the Court had previously ruled on a motion to suppress granting it in part and denying it in part, but he stated that the attorneys were still briefing the legality of the search warrant [*Id.*]. At the time, Defendant indicated general satisfaction with his attorney and stated that, if he had a disagreement with counsel regarding the direction of his case, he would "try to work it out." [*Id.*].

Dr. Kissin concluded that Defendant was competent to stand trial and assist in his defense summarizing:

> Mr. Hood has a history of maladaptive social and interpersonal functioning associated with traits of Antisocial Personality Disorder, substance abuse, cognitive limitations, and psychiatric symptoms. Notably, Mr. Hood has not experienced acute psychiatric symptoms in many years, despite the absence of treatment. At the present time, he does not exhibit any symptoms consistent with a major mental illness, nor does he display functional limitations associated with a severe psychiatric illness.
>
> In regard to his general competency-related skills, Mr. Hood's detailed discussion of the case elements was consistent with information contained in the available materials. He evidenced thorough knowledge and understanding of the allegations against him. He also evidenced a clear understanding of the legal process in general, accurately describing the elements and procedures of a criminal proceeding, as well as the various participants involved in the legal process and their respective roles. Notably, Mr. Hood exhibits a generally positive view of the criminal justice process and his attorney's efforts on his behalf and asserts his intention to continue actively participating in the legal process. He remains hopeful his efforts to suppress elements of the government's evidence will benefit his defense and has actively pursued a legal course that incorporates these considerations. Although court records provide information about additional arguments Mr. Hood has made in his defense which he did not bring up in the context of the instant evaluation, overall, his discussion of the course of his legal case was very much consistent with the

information contained in the case docket. While the ultimate prevalence of Mr. Hood's legal arguments is unknown, in the absence of any evidence of a psychiatric disorder, there is no indication factors related to mental illness are driving his thinking or decision-making process in his legal case.

In conclusion, based upon the available information, it is my opinion that Mr. Hood's competency-related skills are not significantly compromised by symptoms of a serious mental illness or defect such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

[*Id.* at 14].

### 3. Findings from Mental Competency Hearing.

The Court held a hearing on the motion to determine mental competency on September 18, 2018. Attorney Mike Acuff represented Defendant. AUSA Chris Poole represented the Government. Mr. Acuff represented to the Court that Defendant did not want to cooperate with him and refused to talk with him. In fact, prior to the hearing, when Mr. Acuff attempted to speak with Defendant in a courthouse cell, Defendant repeatedly flushed the toilet to drown out Mr. Acuff's voice.

At the beginning of the hearing, Defendant Karl Hood insisted that he be allowed to represent himself. He argued with the Court that he should be allowed to represent himself, and he refused to stop talking when the Court attempted to address him. After admonishing Defendant several times to stop interrupting the Court, the Court had Defendant removed from the courtroom and placed in a cell immediately behind the courtroom. A video monitor was set up immediately outside the cell so that Defendant could hear and see the proceedings.

The only witness called at the hearing was Dr. Kathryn Smith. Dr. Smith holds a Doctor of Philosophy in Education, Counseling Psychology Program, from the University of Tennessee. She is licensed by the State of Tennessee as a Health Service Provider. She is also qualified as a Certified Forensic Examiner by the Tennessee Department of Mental Health and Substance Abuse

Services on the subject of mental competency to stand trial.

Dr. Smith testified that, prior to the September 18, 2018, hearing, she attempted to interview and evaluate Defendant, but he refused to cooperate with her. He left the meeting when she attempted to talk with him. Thereafter, he continued to refuse to meet with her.

During the hearing, Dr. Smith testified concerning Dr. Kissin's mental evaluation of Defendant. Dr. Smith noted Defendant's borderline IQ; his distrust of people in general; his unwillingness to cooperate with his counsel; the fact that he has had episodes of decompensation while incarcerated; and the fact that he has been disruptive in past hearings. She characterized these findings as signs that Defendant may not be competent. She focused, in particular, on Defendant's recent history of disruptive behavior in federal court as an indication of possible episodes of decompensation reflecting a deterioration of Defendant's mental health while incarcerated awaiting trial. Upon questioning by the Court, however, Dr. Smith admitted that, without an examination, she could not determine whether Defendant was currently competent to stand trial.

The hearing was then continued until September 24, 2018, when Defendant was again given the opportunity to be present in the hearing. Defendant continued to insist that he be allowed to represent himself and objected to having Mr. Acuff's represent him. The Court explained to Defendant that, following a determination of his mental competency, the Court would then entertain his request to represent himself. The Court informed Defendant that, unless and until a decision was made that he was competent, Mr. Acuff would continue to represent him.

Defendant continued to insist that he had not "engaged" Mr. Acuff to represent him and did not want Mr. Acuff to act as his attorney. The Court advised Defendant that Mr. Acuff would continue to represent him at the mental competency hearing, and that Defendant would not be

allowed to question the witness. Defendant stated that he intended to question the witness despite the Court's instruction to the contrary. At that point, the Court gave Defendant the choice between retiring to a cell immediately behind the courtroom and being provided with a video monitor to observe and hear the courtroom proceedings or remaining in the courtroom and permitting Mr. Acuff to represent him. Defendant elected to leave the courtroom and go to the cell. The Court honored Defendant's choice and had the Deputy Marshals escort him to the cell. Defendant was calm during this exchange with the Court, although Defendant remained adamant that he did not want Mr. Acuff to represent him and that he intended to represent himself.

After Defendant was escorted to the cell, Mr. Acuff asked permission for Defendant to testify on his own behalf on the limited issue of Defendant's ability to understand the charges against him and to assist in his own defense. The Court granted Mr. Acuff's request, and had Defendant brought back into the courtroom so that he could have an opportunity to testify concerning his own belief as to his mental competency.

Mr. Hood testified that he did not think he needed a mental competency evaluation and the mental competency hearing was irrelevant to his case. He explained that Erin Rust did not "present his case the correct way" in relation to the motion to suppress she filed on his behalf which is why he requested that she be removed from his case [Doc. 83; Transcript, Sept. 24, 2018 hearing at 21, 26]. Following his testimony, Defendant returned to his cell where he was able to watch and listen to the balance of the hearing via a video monitor.

The Government then called Dr. Kissin, who testified via videoconference. The bulk of Dr. Kissin's testimony was simply a reiteration of the mental evaluation of Defendant that she had performed while he was hospitalized at FMC Devens. Significantly, however, Dr. Kissin testified that "acting out" in court would not be dispositive of competency to stand trial, and, more

specifically, "[P]eople act out in court all the time." [*Id.* at 36]. She testified that one would need to look at the psychiatric symptoms and, "at that point, [Defendant] was not presenting with any psychiatric symptoms, so any type of misbehavior in court or anywhere else at that point in time would be difficult to attach to the central symptoms of mental illness." [*Id.*]. Dr. Kissin elaborated,

> it matters whether someone is choosing not to listen or accept boundaries as opposed to being actively psychotic and, you know, responding to internal stimuli, not being able to control themselves. . . . People may be angry. They're disagreeing with what's going on. If that anger is related to some psychotic thinking, that's one thing. If that anger is related to just not being happy with the situation, feeling they're not being treated fairly, having poor impulse control . . . there would have to be some kind of further evaluation of what specifically is at the bottom of this acting out. Most of the time it's displeasure with what's happening.

[*Id.* at 36-7]. Dr. Kissin was also able to observe Defendant testify, and she stated she did not see anything about his testimony or demeanor that was indicative of psychosis [*Id.* at 58]. She further testified that Defendant's decision to fire his first attorney because she was not successful in having certain evidence suppressed; his decision not to cooperate with newly appointed counsel; and his insistence that he represent himself in the competency proceedings after repeatedly being told by the Court that he could not, do not indicate a competency issue unless there are clear symptoms of mental illness driving his thinking [Id. at 65-66]. And she stated that did not see any such symptoms when she evaluated him [*Id.*].

  **4.**  **Conclusion**

Based on the totality of the record, the undersigned finds that the government has met its burden of proving competency by a preponderance of the evidence. The Court makes the following specific findings:

- The mental evaluation performed on Defendant by Dr. Kissin reflects that he is not currently suffering from psychosis or other serious mental illness.

- Dr. Smith testified that she was unable to reach a conclusion concerning Defendant's mental competency to stand trial without performing an evaluation on

him.  Defendant refused to participate in an evaluation or even talk with her.

- During the December 1, 2016, court hearing for Defendant's initial appearance; the March 16, 2017, court hearing on Defendant's motion to suppress; the August 11, 2017, court hearing on Defendant's motion for psychiatric evaluation; and the January 25, 2018, court hearing on Attorney Rust's motion to withdraw, Defendant was able to act appropriately in the courtroom and did not disrupt the Court's proceedings.

- Later, when Defendant's conduct in Court became disruptive, he has focused solely on the issue of representation by counsel, *i.e.*, he is adamant that he does not want to be represented by an attorney.  Defendant is insistent upon representing himself, and he has been able to express his position coherently without yelling or arguing.

- Defendant's disruptive conduct is manifested by a pattern of talking over the Court and refusing to follow the Court's instructions.  It should be noted that Defendant's misconduct in Court did not emerge until fairly recently, and it seems to mirror an identical manipulative strategy embraced by another federal inmate with whom Defendant was incarcerated while both men were awaiting trial.  There is no evidence that leads the Court to conclude that Defendant's disruptive behavior in the courtroom is caused by mental illness.  Rather, the Court concludes that Defendant's behavior is intentionally calculated to achieve some result that he views as a favorable outcome.

The Court concludes that Defendant is **NOT** suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Rather, the evidence suggest that Defendant does understand the nature of the criminal proceedings and the potential consequences; and he is able to assist in his defense should he choose to do so.  The fact that Defendant chooses not to assist in his defense does not, *per se*, render him incompetent.  As Dr. Kissin testified, sometimes an unwillingness to cooperate is rooted in mental illness, and sometimes it is rooted in displeasure with what is happening.  Here, it is evident that Defendant's refusal to cooperate with his attorney and with the Court is not rooted in mental illness, but rather in some intentional strategy formulated by Defendant.

For the foregoing reasons, pursuant to 18 U.S.C. § 4241(d), it is **RECOMMENDED**[1] that the Court find by a preponderance of the evidence that Defendant is **NOT** presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Courts order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).